JUDGE COFER
delivered the opinion op the court.
The appellant, who is the widow of Thomas W. Lowe, brought' this suit, alleging, in substance, that her husband and J. J. Monroe were partners in the business of farming; that they purchased certain lands, described in the petition, as partners, and paid for them with partnership money; that the lands were conveyed to them as partners, and were by them so held, treated, and used. She also alleged that her husband left no living descendants; that his estate was solvent, which, for the purposes of this case, we will treat as equivalent to an allegation that the partnership effects, aside from the land, were sufficient for the payment of partnership debts. On these averments she claimed that the land owned by the partners was impressed with the character of personal property, and that she was entitled, under the statute, to one half of her deceased husband’s share in the partnership lands. The husband’s heirs at law were made defendants, and in their answer denied that the lands described in the petition were purchased and held as partnership property, and averred that they were held by Lowe & Monroe as tenants in common and not as partners.
At the same term at which the answer was filed the case was, -on motion of the defendants, submitted for judgment. Before judgment was rendered the appellant moved to set • aside the submission, but her motion was overruled.
The court adjudged the appellant was only entitled to dower, and refused to adjudge to her any part of the land in-fee. From that judgment she prosecutes this appeal. She insists it was error to submit the action on motion of the *691 defendants at the term at which they filed an answer denying that the lands were held as partnership property. If, on the facts alleged, she was entitled to an interest in fee in her husband’s share of the land, and any of the material allegations in the petition were denied by the answer, it was error to submit the cause at the term at which the answer was filed; but if, on the facts alleged, the appellant was only entitled to dower, she was not prejudiced by the error.
In Cornwall v. Cornwall (6 Bush, 369) this court held, that “ When property is bought with partnership funds, to be used in carrying on and facilitating the partnership business and purposes, and is used as a means of continuing and enlarging the partnership business and operations and profits, it is then partnership property, impressed with the characteristic of personalty for any and all purposes, not only as between the partners inter se and the firm and its creditors, but also as to distribution between the administrator, distributees, and heirs.” And it was there held that the widow was entitled, as distributee, to one third of the net proceeds of real estate so held and used by the firm of which her husband was a member. The property there in contest’was a lot, and improvements thereon, which were purchased with partnership funds, to be used as a factory in making candles and soap, one of the main businesses of the firm.
The doctrine of that case is, we think, well supported by the authorities. The firm was engaged in manufacturing and trading; the property occupied was a city lot; the firm, as we may presume from the nature of its business, was largely engaged in trade, and the real estate held by it was properly treated as a part of the partnership stock.
But does the doctrine of that case apply to the facts of this ? The doctrine of courts' of equity, that real estate held by trading partnerships, purchased with partnership funds, and used for partnership purposes, is to be treated as personal *692 property, is based on the assumption that the partners intended it to be so treated, and thereby converted it into personalty. And it would seem to follow, from this reason for the existence of the rule, that in all cases like this the decisive question is, whether from the nature of the partnership business, the extent and character of the real estate owned by the firm, and the attending circumstances, the court can gather that it was the intention of the partners to treat the real estate as personalty.
That the rule is based on the reason just suggested is, we think, clear from the authorities. In Galbraith v. Gedge (16 B. Mon. 631) it appeared that four brothers of the name of Gedge were partners, dealing in tobacco and real estate under the firm name of Gedge' & Brothers. One of the partners died. At the time of his death the firm owned a tract of land, which was sold by the survivors to Galbraith, to whom they gave a bond for title. Galbraith brought suit against the surviving partners and the widow and heirs of the deceased partner for specific performance. It was proved that a sale of the land was necessary to pay the firm debts, and the court held the surviving partners had power to sell, but that the legal title to the deceased partner’s interest descended to his heirs, and that in order to invest the purchaser with a complete legal, title they should be required to join in the conveyance.
In the opinion in that case the court said: “We are inclined to think that real property held in the joint names of the firm as partnership stock should be regarded ... in equity as held by them in trust as partnership property, subject to the ordinary rules applicable to partnership personal property — as liable to the satisfaction of the claim of each partner upon the others, and as liable to the satisfaction of the debts of the partnership. After the satisfaction of the claims of the several partners, and of the debts of the concern, the residue of the real estate will be considered, when the partners have not impressed upon it the character of personalty, as belonging to the- *693 partners, both in equity and at law as tenants in common; and it will be subject to division and several appropriation among them.” And again, the court said, upon the death of the deceased partner, “ His interest in the land descended to his heirs-at-law, who became tenants in common with the surviving partners, and a right of dower therein of the widow attached to his interest; but the rights of the widow and heirs were subject in equity to be entirely defeated by the necessity of appropriating the land to the payment of debts.”
It was said,-in Cornwall v. Cornwall, that there was nothing in Galbraith v. Gedge in conflict with the views expressed in that case. That there is an apparent conflict can not be doubted. In one case it was held that if there was a surplus of partnership lands remaining after satisfying all claims of creditors and of the partners against the firm, it would be “subject to division and several appropriation” among the heirs of the deceased partner, and to the claim of his widow to dower. "While in the other it was held, that such surplus was to be distributed as personalty, and that the widow of the deceased partner should receive one third in fee instead of dower. This apparent conflict can be reconciled only on the ground 'that in one case the facts were such as to show an intention on the part of the partners to impress upon the partnership real estate the character of personalty, while in the other no such intention was shown. This rule is perhaps not as certain and convenient as, on account of the magnitude and importance of the interest that will sometimes be involved, might be desired; but it is not only the best that can well be established, but is sanctioned by many authorities, some of which we will notice.
That the partners must have intended partnership real estate to be treated as partnership assets and therefore as personalty, so far as might be necessary for the payment of partnership liabilities, must be assumed in all cases unless a contrary inten *694 tion be plainly manifested; for, as Mr. Chancellor Kent said in his note on the judgment of the vice chancellor in Smith v. Jackson (2 Edw. 28), “ There is no need of any other agreement than that the law will necessarily imply from the fact of the investment of partnership funds by the firm in real estate for partnership purposes. If the partners mean to deal honestly, they can not have any other intention than the appropriation of the investment, if wanted, to pay the partnership debts.” (Note, p. 39, vol. 3, 5th ed. Kent’s Com.)
Ripley v. Waterworth (7 Vesey, 425) is a leading English case on this subject. The decision of the Lord Chancellor, Eldon, was made to turn on the intention of the partners, as gathered from the partnership deed, the nature and character of the property, and the business of the firm; and because, from all these, he found such to have been their intention, he treated the partnership lands as personal estate. He said: “ By the deed it (the real estate) is to be considered a part of the capital or stock in trade. The subject, I admit, is real, but combined with a great number of fixtures, utensils, and implements, many of which are personal. There being three parties it was rational they should so engage, and that when the partnership should cease the property should, by mutual agreement, be disposed of as should be most beneficial to them. It was beneficial that the whole should be sold, out and out, at the end of the concern, rather than that each individual third part should be brought to market.”
Thornton v. Dixon (3 Bro. C. C. 190) and Bell v. Phyn (7 Vesey, 453) were decided on the same ground, the Master of the Rolls remarking, in the latter case, that even if the property “was partnership property, there was nothing done by the partners to alter the nature of it.”
In the more modern English cases of Randall v. Randall (7 Simon, 271) and Cookson v. Cookson (8 Simon, 529) the prior doctrine of the courts on this subject has been thought *695 to be so modified as to render it necessary, in order that partnership land may be converted into personalty beyond what is necessary for partnership purposes, that there should be an express agreement to that effect. (Collyer on Partnership, sec. 149.)
In his note to section 94 of Story on Partnerships, Mr. Gray says, the subject has often been alluded to in the American courts, and the books are full of dicta on the matter; but there seems to be but few cases, in which the point has arisen directly, for decision between the widow or heirs on one side, and the personal representatives on the other; and he cites the following list of cases in which it has been held that in. the absence of an agreement for an absolute conversion into personalty the claims of the widow and heir must prevail: Wilcox v. Wilcox, 13 All. 562; Buckley v. Buckley, 11 Barb. 43; Goodburn v. Stevens, 5 Gill, 1; Hale v. Plummer, 6 Ind. 121; Summey v. Patton, 1 Winst. Eq. 52; Dilworth v. Mayfield, 36 Miss. 40; Piper v. Smith, 1 Head, 93.
This seems to us to be the true doctrine, with this modification, that the agreement necessary to be shown may be either express or implied. If expressed, of course no difficulty can arise; but if no agreement be expressed, then the court is to decide on all the facts whether the partners intended their real estate to be treated as part and parcel of their capital stock, not only for the purposes of the partnership, but for all purposes. When such an agreement or intention is shown from the nature of the partnership business, the character and extent of the real estate involved, and the partners’mode of treating and considering it, it should be held to be personalty, not only for partnership purposes, but for purposes of distribution also. But in the absence of such facts and circumstances as will warrant the court in finding that it was intended or agreed by the partners that their real estate should be regarded as personalty for all purposes, it should only be so regarded *696 for the purposes of the partnership, and after these are answered the surplus should be held to be real estate for all other purposes.
This rule will, we think, not only reconcile our own cases on the subject, but is founded in principle, and is not inconsistent with any considerable number of English or American cases. It establishes one rule for all classes of partnerships, and will generally not be difficult of application. Applying this rule to the case in hand, there is no difficulty in deciding it. The mere purchase' of the lands with partnership money and their use for the purpose of carrying on the partnership business of farming, furnishes no sufficient evidence-of an intention on the part of the partners to convert the land into personalty. This case is like that of Galbraith v. Gedge, where the partners had done nothing to impress upon their land the character of personalty; and is unlike the case of Cornwall v. Cornwall, where from the nature of the firm business, manufacturing and trading, and the character of the real estate, a city lot, and its use for carrying on the business of a manufacturing and trading firm, the conclusion that the partners intended to treat it as personalty was easy and natural. Such property, if treated as personal, is subject to the equitable control of the chancellor as partnership property, and may be sold by him as incident to his power to settle an<J wind up the business of partnerships; but if real estate, could only be sold as other real estate owned by tenants in common.
When a small parcel of land has been purchased and improved by a firm for the purpose of carrying on upon it a particular branch of business, it is not at all unreasonable to-suppose that they mean to treat the land as personalty, as part and parcel of their stock in trade and business, and to make the real estate and all improvements, utensils, and fixtures thereon and used in their business, an entirety. But it would be most unreasonable to suppose that partners in farming, a *697 business in which the real estate occupied and used is by far the most important and expensive part, intended by purchasing lands with partnership funds, or by using the land as partnership property, to blend the land and the stock, produce, and implements of husbandry into one common and entire thing, and to treat it all as personal property.
As, on the facts stated, the appellant was not entitled to any part of the land in fee, the judgment is affirmed.